Ark. State Highway Comm. *v.* Russell

5-3736                                    398 S. W. 2d 201

Opinion delivered January 10, 1966.

[Rehearing denied February 14, 1966.]

*Mark E. Woolsey, Thomas B. Keyes,* for appellant.

*Lookadoo, Gooch & Lookadoo,* for appellee.

George Rose Smith, Justice. This is an action by the State Highway Commission to condemn, in fee simple, a 28.2-acre strip across the appellees' cattle ranch. The jury fixed the landowners' damages at $26,000. The Commission's principal contention for reversal is that the trial court erred in refusing to strike the testimony of Guy C. Russell, who, together with his wife, owns the land.

On direct examination Russell explained in detail the damage that he would suffer as a result of the condemnation. He valued his property at $82,800 before the taking and at $40,350 after the taking. He considered the strip actually being taken to be worth $11,200 (about

$400 an acre). He attributed most of his damage, however, to the fact that the controlled-access highway to be constructed will divide his ranch into two tracts effectively separated by the proposed highway. Instead of being able to go directly from one side of his ranch to the other it will be necessary for him to travel at least four miles to cross the highway. As a practical matter Russell will be forced to operate his property as two separate ranches, with the equipment and other facilities on one side of the highway being duplicated on the other side, whereas such duplication was not necessary before the ranch was cut in two. A similar fact situation was presented in *Ark. State Highway Commn.* v. *Union Planters Nat. Bank*, 231 Ark. 907, 333 S. W. 2d 904 (1960), where we observed that the controlled-access highway would bisect a plantation "as effectively as if a high stone wall had been erected down the center of the property."

On cross examination the attorney for the highway commission elicited an admission from Russell that the Arkadelphia Country Club had offered him $375 an acre for part of his land and that he had taken this offer into consideration in arriving at his conclusion that the property as a whole was worth $82,800 before the taking. Counsel for the commission, after having drawn this admission from the witness, at once asked the court to strike the witness's testimony about the value of the property before the taking, on the ground that Russell had taken an inadmissible offer into consideration in forming his opinion. The court denied the motion to strike. It is now insisted, upon the authority of *Ark. Highway Commn.* v. *Wilmans*, 236 Ark. 945, 370 S. W. 2d 802 (1963), that the court erred in overruling the appellant's motion.

We are decidedly of the view that the commission's contention is untenable. This land has been owned by the Russell family for many years. The present owner, the appellee Guy C. Russell, was intimately familiar with the property and was unquestionably qualified to state

his opinion about its value. *Ark. State Highway Commn. v. Muswick Cigar & Beverage Co.,* 231 Ark. 265, 329 S. W. 2d 173 (1959). There is no suggestion that any part of his testimony on direct examination was inadmissible. The appellant argues, however, that his testimony should have been stricken simply because he conceded on cross examination that he had taken into consideration an offer—an offer that would not have been admissible had his attorney tried to bring it out during the direct examination of his client.

It is at once apparent that if we sustain the commission's contention it will hardly be possible in the future for a landowner or an expert witness to give an admissible opinion about the value of property. In nearly every instance a landowner who has known his land for years, or an expert witness who has acquainted himself with a piece of property, takes into account facts that he knows only by hearsay or that for some other reason would not be admissible as independent evidence upon the examination in chief. If the witness's candid admission that he has considered such matters destroys his testimony, only a dishonest or an ill-informed witness can give an admissible opinion about the value of property.

The overwhelming weight of authority is contrary to the appellant's present contention. It has repeatedly been held that expert or lay testimony is competent even though it is based wholly or partly upon hearsay. *H. & H. Supply Co.* v. *United States,* 194 F. 2d 553 (10th Cir. 1952); *Finley* v. *Board of County Commissioners,* 291 P. 2d 333 (Okla., 1955); *Hanover Water Co.* v. *Ashland Iron Co.,* 84 Pa. (3 Morris) 279 (1877).

The point has been considered by two of our great judges. Judge Learned Hand, in holding that an expert witness could and *should* take into account a matter that would not have been independently admissible, had this to say: "Be that as it may, it would be absurd to exclude a qualified expert's appraisal because he had con-

sidered such [inadmissible] evidence; indeed he ought to consider it; it is part of the data on which his opinion should rest. It is just because he is an expert, and for that reason able to give its proper weight to all data, that he is allowed to appraise the property at all. No court has held, so far as we can find, that his opinion shall not be received because it is so based in part; and we should not follow its ruling, if there were one, unless we had no escape." *United States* v. *Delano Park Homes,* 146 F. 2d 473 (2d Cir. 1944). Justice Holmes expressed the same thought more succinctly: "An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience." *National Bank of Commerce* v. *City of New Bedford,* 175 Mass. 257, 56 N. E. 288 (1900).

On direct examination a witness certainly should not be allowed to repeat hearsay statements made by others or to testify about mere offers or other matters inadmissible under the rules of evidence.

On cross examination, however, the situation is entirely different. It is true, as the appellant contends, that if cross examination demonstrates that the witness had no reasonable basis whatever for his opinion, then his testimony should be stricken. *Ark. State Highway Commn.* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436 (1963). Furthermore, if cross examination shows that the witness has a weak or questionable basis for his opinion, that fact has a bearing upon the weight to be given the witness's testimony. The cross-examining attorney, however, is not entitled to embark upon a fishing expedition with immunity from any unfavorable information he may elicit. He acts at his peril in putting a question that may evoke an answer damaging to his own case. (Our opinion in the *Wilmans* case, *supra,* to the extent that it is contrary to the views stated here, is disapproved and will not be followed in the future.)

The present appeal involves a second point, subordinate to the one we have just discussed. The attorney for the highway commission, in cross examining one of the landowners' expert witnesses, succeeded in eliciting an admission that the witness had reached his evaluation of the property after condemnation by determining its value before condemnation and then subtracting from that value the specific elements of damage that the witness found to exist. Counsel for the commission was successful in asking the court to strike the witness's testimony about the value after condemnation, on the ground that the witness had resorted to an inadmissible formula in arriving at his conclusion. It is now insisted that the court should have gone a step farther by also striking the witness's testimony about the value of the property before condemnation, the argument being that the witness's testimony about the "before" value is so closely related to his testimony about the "after" value that the one may be misleading without the other.

We reject this argument. For the reasons stated in our discussion of the appellant's first contention the trial court was actually in error in striking the expert witness's opinion about the worth of the land after the taking. That error, however, was brought about at the highway commission's own request. Moreover, we are not convinced that the commission was prejudiced by the court's refusal to strike the witness's testimony about the value of the land before condemnation.

Affirmed.